IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUTH VIRGINIA BARRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1517 |
| | ) | |
| WASHINGTON COUNTY CHILDREN | ) | Magistrate Judge Hay |
| AND YOUTH SOCIAL SERVICE AGENCY, | ) | |
| CHRISTY CROSS, individually and in her capacity | ) | |
| as Caseworker II for Washington County Children | ) | |
| and Youth Social Service Agency, | ) | |
| FAMILY CARE FOR CHILDREN & | ) | |
| YOUTH, INC., DEBORAH A. MCALLISTER, | ) | |
| individually and in her capacity as Regional | ) | |
| Director of Family Care for Children & Youth, Inc., | ) | |
| JAMIE L. LEGAS, individually and in her capacity | ) | |
| as Supervisor for Family Care for Children & | ) | |
| Youth, Inc., TAMARA SMITH, individually and | ) | |
| in her capacity as Case Manager for Family Care for | ) | |
| Children & Youth, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

HAY, Magistrate Judge

Plaintiff, Ruth Virginia Barron, commenced this action under 42 U.S.C. § 1983, alleging that defendants violated her rights under the First Amendment of the United States Constitution by preventing her from and/or chilling her right to speak out in the best interest of the foster child for whom she was caring and by retaliating against her when she did.

According to the complaint, Ms. Barron was an approved foster caregiver with defendant Family Care for Children & Youth, Inc. ("FCCY"), and Washington County Children and Youth Social Service Agency ("CYS"). In August of 2002, she became a foster parent to Keith Crawford ("Keith") under an agreement with FCCY.

Soon after Ms. Barron took custody of Keith, she noticed aberrant behavior she believed was related to the fact that the eleven-year old child had been prescribed six different medications by Dr. Farheen Fahim, a psychiatrist.  When Keith later developed an ulcer, his treating pediatrician ordered that all but one of the psychiatric medications be stopped.  Ms. Barron alleges that she subsequently noticed "a vast improvement" in the child's mental functioning.  He also "began to disclose disturbing recollections of his previous foster home, along with his memory of Dr. Fahim pressuring him to believe that his parents had sexually abused him."  Complaint ¶ 11.

During the next visit to Dr. Fahim, when Keith began crying uncontrollably, Ms. Barron stated that she wanted to remain with him during his examination.  She also attempted to explain the changes in medication and Keith's revelations since his medications had been discontinued.  Ms. Barron was allegedly told that the examination was none of her concern, ordered out of the room and eventually told to take the child with her.  Pursuant to the foster care agreement, Ms. Barron reported the incident at Dr. Fahim's office and her conclusions about the child's over-medication to both CYS and FCCY.  Defendants Christy Cross, a caseworker for CYS, and/or Deborah A. McAllister, Regional Director of FCCY, Jamie Legas, a Supervisor at FCCY, and Tamara Smith, a Case Manager for FCCY, informed Ms. Barron that Keith would not be returned to his natural parents despite his wish to do so, accused her and the child of lying, and threatened to remove him from her care if she did not refill the medications.  Soon thereafter, Ms. Barron received a letter from Ms. Legas questioning her compliance with the FCCY policy regarding twenty-four hour supervision of the child.  Although not threatening, Ms. Barron contends that the letter "clearly conveyed the strong recommendation that Ms. Barron adhere to company policy and served as notice that her foster parent activities, now suspect, were subject to even stricter scrutiny."  Complaint ¶ 14.

Prior to a parental rights hearing scheduled for mid-September 2003, Ms. Barron filed a sworn affidavit with the Orphans Court describing the situation, and expressing a desire for both herself and Keith to testify although neither of them was permitted to do.  Shortly after filing the affidavit, on September 16, 2003, Ms. Barron met with Ms. McAllister at which time McAllister discussed concerns that Barron was not following FCCY policies.  McAllister was particularly concerned with the fact that Barron had discontinued the child's medication without informing FCCY or CYS, a claim Ms. Barron denied.  Barron was also allegedly criticized for filing the affidavit in which she "put FCCY down."  Complaint ¶ 16.

Ms. Barron subsequently learned that Dr. Fahim had reported the office incident to CYS and FCCY, and expressed her opinion that plaintiff was senile and no longer fit to provide foster care.  Ms. Barron also discovered that someone had reported her to CYS and FCCY for allowing another adult, who was allegedly a prior felon, to live with her in violation of FCCY policy.  Ms. Barron contends that neither allegation was true.

On September 24, 2003, Ms. Legas arrived at Ms. Barron's home and explained that she was there to remove Keith because of the danger posed by living in the same home with a felon.  Despite Ms. Barron's insistence that no one else was living at the house except herself and Keith, Ms. Legas searched the home until she discovered the belongings of the alleged houseguest.  Although Ms. Barron explained that he was simply storing his possessions there temporarily, she was accused of lying and the child was forcibly removed against his will.

Ms. Barron unsuccessfully appealed the removal of Keith from her care and was subsequently advised by Ms. Legas, on October 29, 2003, that FCCY was revoking her eligibility as an approved foster parent with their agency.  Barron asserts that defendants have since spread false rumors about her fitness as a foster parent to child care agencies in neighboring counties.

Plaintiff filed the instant complaint on October 31, 2005, bringing claims under §

1983 for violating her First Amendment rights (Count I), as well as state law claims for

intentional interference with economic opportunity (Count II) and intentional infliction of

emotional distress (Count III).  Defendants CYS and Ms. Cross have now filed a motion to

dismiss largely arguing that they are entitled to immunity and, alternatively, that plaintiff has

failed to plead her intentional tort claims against Cross with the requisite specificity and that

plaintiff should be required to provide a more definite statement of those claims.[1]

In reviewing a motion to dismiss under Rule 12(b)(6), all well pleaded allegations

of the complaint must be accepted as true and viewed in a light most favorable to the non-

movant.  Brader v. Allegheny General Hospital, 64 F.3d 869, 873 (3d Cir. 1995); Scrob v.

Patterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  The Court is not, however, required to accept as

true unsupported conclusions and unwarranted inferences.  Schuylkill Energy Resources v.

PP&L, 113 F.3d 405, 417 (3d Cir. 1997).  Thus, "if it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief," the motion to

dismiss is properly granted.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972), quoting Conley v.

Gibson, 355 U.S. 41, 45-46 (1957).  The issue is not whether the plaintiff will prevail in the end

but only whether he should be entitled to offer evidence in support of his claim.  Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974).

Defendants first argue that plaintiff's § 1983 claims brought at Count I stemming

from the removal of Keith from her home should be dismissed as to defendant Cross because her

---

[1]The Court notes that the other defendants in this matter previously filed a motion to
dismiss which was denied by Judge Schwab in a Memorandum Opinion filed on April 11, 2006
(Dkt. No. 26).  Because the instant motion was submitted on behalf of defendants CYS and Cross
alone, for purposes of this motion, the reference to "defendants" refers only to them.

actions are protected by judicial immunity.[2]  Specifically, defendants argue that public officials

enjoy the same immunity from suit as judicial and quasi-judicial officers when acting pursuant to

a court order and that because Judge Katherine B. Emery, of the Court of Common Pleas of

Washington County, Pennsylvania, issued several orders requiring Keith to be placed in certain

other facilities, Cross was merely following a court directive and is entitled to immunity.[3]  In so

arguing, defendants rely principally on Lockhart v. Hoenstine, 411 F.2d 455 (3d Cir.), cert.

denied, 396 U.S. 941 (1969), in which the Court found that, "[i]n addition to the recognized

immunity enjoyed by judicial and quasijudicial officers, including prothonotaries, there exists an

equally well-grounded principle that any public official acting pursuant to court directive is also

immune from suit."  Id. at 460.  Because there was no genuine issue of material fact in Lockhart

as to whether the defendant was acting pursuant to a court directive, the Court concluded that he

was immune from suit.  Id.

Here, however, it does not appear that defendants were acting pursuant to a court

directive.  To the contrary, according to the complaint, Keith was removed from plaintiff's home

on September 24, 2003.  See Complaint ¶ 19.  Judge Emery, however, did not issue an order

directing that Keith be placed in a facility for a mental health evaluation until October 17, 2003.

---

[2]42 U.S.C. S 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress.

[3]See Defs. Exhs. A, B and C: Orders signed by Judge Emery dated October 17, 2003,
November 10, 2003 and December 15, 2003, respectively (Dkt. No. 35).

<u>See</u> Defs. Exh. A.  Thus, to the extent that Cross participated in the decision to remove Keith

from plaintiff's home, she could not have been acting at the behest of the court and, therefore, is

not entitled to immunity under <u>Lockhart</u>.[4]

Defendants also argue that plaintiff's § 1983 claims against Cross arising from the

revocation of plaintiff's status as a foster care provider should be dismissed because Cross is

entitled to qualified immunity.

Determining whether a CYS official is entitled to qualified immunity requires the

Court to engage in a three-part inquiry.  <u>Doe v. County of Centre, PA</u>, 242 F.3d 437, 454 (3d Cir.

2001).  The threshold question is whether the plaintiff has alleged a violation of her statutory or

constitutional rights.  <u>Id.</u>  <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If a favorable view of

plaintiff's allegations suggest that the official's conduct violated a constitutional right the Court

must then ask whether the right alleged to have been violated was clearly established in the

existing law at the time of the violation and, if so, whether a reasonable official should have

known that the alleged action violated the plaintiff's rights.  <u>Id.</u>  The second and third inquiries

---

[4]Defendants have also suggested in conjunction with their judicial immunity argument that plaintiff's § 1983 claim regarding Keith's removal from her home should be dismissed because plaintiff has not alleged any facts that would establish that Cross was involved in, either directly or indirectly, removing Keith from plaintiff's home. Although not a model of clarity, plaintiff has identified Cross as a "caseworker" and has alleged that "[a]fter explaining the circumstances to all named Defendants ... Defendants Caseworker, and/or Case Manager, and/or Supervisor, and/or Regional Director, simply informed Ms. Barron that the child would be going home, accused both her and the child of lying, and ultimately threatened to remove him from her care if she did not refill the medications."  Complaint ¶¶ 3, 13.  As well, plaintiff has alleged that Keith was, in fact, forcibly removed from her home as the result of "the joint conduct of the Defendants" in retaliation for exercising her First Amendment rights, that "[t]he actions of the Defendants acting jointly ... sought to prevent or chill the exercise of Plaintiff's right to speak out in the best interest of the minor foster child ...." and that the "Defendant Agencies ... jointly, and individual Defendant[s] ... and/or Defendant Caseworker II, acting as decision makes for said agencies" have acted "to deprive the Plaintiff of her civil rights...."  Complaint ¶¶ 19, 21, 23, 24-25.  These assertions, in the Court's view, are sufficient to state a claim against Cross for removing Keith from plaintiff's home in retaliation for speaking out on his behalf.

are related and require the Court to assess the "objective legal reasonableness" of an official's actions in light of legal rules that were "clearly established" at the time the official took the action. Doe v. County of Centre, PA, 242 F.3d at 454, quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal quotations and citation omitted). Thus, the right in question must be defined in a particularized manner reflecting the specific context of the case rather than an as a abstract or generalized proposition. Saucier v. Katz, 533 U.S. at 201-02. See Doe v. County of Centre, PA, 242 F.3d at 454. The relevant question, therefore, is "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. at 202.

In the instant case, defendants argue that plaintiff has not only failed to allege a constitutional violation but that she has failed to allege facts demonstrating that Cross' actions departed from reasonable professional standards of a social service agency or that they violated a clearly established right that a reasonable official would know violated that right.

Here, plaintiff has alleged that defendants sought to prevent or chill the exercise of her right to speak out in the best interest of her foster child and that they have encouraged and/or tolerated the practice of retaliating against foster caregivers who speak out on behalf of a minor child and/or criticize agency performance. Complaint ¶¶ 23, 25c. Plaintiff also alleges that defendants' acts of forcibly removing Keith from her home, terminating her foster care contract and spreading rumors about her mental condition and fitness to act as a foster parent were taken in retaliation for her protected actions in speaking out about her belief that Keith was receiving improper medical care and her desire to testify at the September 2003 parental rights hearing. Complaint ¶ 21. Viewing these allegations in the light most favorable to plaintiff, the Court finds that she has properly alleged a violation of her First Amendment rights. Curinga v. City of Clairton, 357 F.3d 305, 310 (3d Cir. 2004) (To establish a First Amendment retaliation

claim, the plaintiff must establish that the speech at issue was protected and that the speech was a substantial or motivating factor behind the alleged retaliatory action.).

In so concluding, the Court finds defendants' argument that plaintiff has failed to plead facts that would demonstrate her speech is protected in the first instance to be without merit. Defendants argument is based on the premise that when a child is removed from his or her parents CYS retains legal custody over the child while a foster parent has only physical custody and, thus, does not stand *in loco parentis* to the child. As such, defendants suggest that because only the state agency is responsible for the actual care and custody of the child Keith's welfare is none of Ms. Barron's concern.

Whether or not a foster parent stands *in loco parentis* to the foster child, however, does not preclude a finding that speech regarding the care and welfare of that child is a matter of public concern and, thus, protected. Indeed, "[a] public employee's speech involves a matter of public concern if it can be 'fairly considered as relating to any matter of political, social or other concern to the community." Curinga v. City of Clairton, 357 F.3d at 313, quoting Green v. Philadelphia Housing Authority, 105 F.3d 882, 885 (3d Cir.), cert. denied, 522 U.S. 816 (1997). Only speech that does nothing more than express a personal grievance is not protected. See Connick v. Myers, 461 U.S. 138, 149 (1983).

Here, not only does defendants' argument not speak to whether plaintiff's speech was a matter of public concern but Judge Schwab, in disposing of the motion to dismiss previously filed by the other defendants, has already found that plaintiff has satisfactorily pled that defendants retaliated against her for expressing her concerns about matters which fall within the scope of public concern. See Memorandum Opinion, Schwab, J., p. 9 (Dkt. No. 26). Indeed, as previously discussed, it can reasonably be inferred from the allegations in the complaint that plaintiff's speech was intended to bring to the public's attention the fact that defendants were

allowing foster children to be over-medicated and were ignoring Keith's expressed desire to be

returned to his natural parents without giving him a full hearing, and that when she attempted to

bring these matters to defendants' attention they retaliated against her by unjustly accusing her of

violating agency policies and forcibly removing Keith from her care.  Complaint ¶¶ 13-16, 23-24.

These facts, as already found by Judge Schwab, are sufficient to state a constitutional violation.

        Defendants nevertheless argue that even if plaintiff has properly alleged a

constitutional violation, she has failed to allege facts that would suggest that Cross' actions

violated a clearly established right or that a reasonable official would know that the action taken

violated that right.  To support their position, defendants assert that plaintiff's allegations in the

complaint show that between August of 2002 and September of 2003, plaintiff had unilaterally

stopped giving Keith his prescribed medications, that she violated the 24-hour supervision policy

and that they had received reports that plaintiff had permitted an unapproved houseguest to reside

in her home while Keith was residing there.  Complaint ¶¶ 10, 14, 17, 18.  Under these

circumstances, defendants argue, it would not be clear to a reasonable official that removing

Keith from plaintiff's home was unlawful and, thus, Cross is entitled to qualified immunity.

        The difficulty with defendants argument, however, is that plaintiff has alleged

facts which suggest that the above recited reasons for removing Keith from her home were untrue

and merely pretext in order to remove Keith from her custody in retaliation for plaintiff's

complaints and criticism of defendants.  Complaint ¶¶ 14-21, 23, 24.  Viewed in the light most

favorable to plaintiff, these facts, if proven, would preclude a finding that Cross was acting

within reasonable professional standards or that it would have been unclear to her that removing

Keith from plaintiff's custody was violative of her rights.  See Anderson v. Davila, 125 F.3d 148,

161 (3d Cir. 1997)("[A]n otherwise legitimate and constitutional government act can become

unconstitutional when an individual demonstrates that it was undertaken in retaliation for his

exercise of First Amendment speech."). As such, Cross is not entitled to qualified immunity and defendants motion in this regard is properly denied.

Defendants next argue that plaintiff's claims against CYS are properly dismissed because as a state agency it cannot be held liable under a theory of either *respondeat superior* or vicarious liability and that plaintiff has otherwise failed to allege sufficient facts which would identify a policy or custom pursuant to which CYS was acting.

The law is not in dispute. A municipality may not be held liable under § 1983 merely because it employs a tortfeasor. Rather, liability may only be imposed on municipalities for their own illegal acts thereby requiring a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Commissioners of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997). See Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978); Pembaur v. Cincinnati, 475 U.S. 469 (1986).

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

Commissioners of Bryan County v. Brown, supra (citations omitted).

Moreover, the Supreme Court has held that in civil rights cases alleging municipal liability under § 1983, a complaint does not have to meet a heightened specificity standard. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 167-68 (1993). Rather, the plaintiff need only comply with Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 1163.

In the instant case, plaintiff has alleged in the complaint that:

Defendant Agencies, Family Care for Children and Youth, Inc. and Washington County Children and Youth Social Service Agency, jointly, and individual Defendant Regional Director and/or Defendant Supervisor and/or Defendant Case Manager and/or Defendant Caseworker II, acting as decision makers for said agencies and/or otherwise have established, developed, ratified, approved, instructed, directed, or otherwise encouraged by and through their agents and/or employees the following patterns of conduct creating policies or other de facto usages, customs, practices and procedures, including the following:

a.   Encouraging and/or tolerating the practice of restraining a foster child by and through the use of chemical medication.

b.   Failing to provide appropriate training, instruction and/or follow-up in the area of proper methods of restraint as per a foster child.

c.   Encouraging and/or tolerating the practices of retaliating against approved foster caregivers who petition the government and/or otherwise speak out in the best interest of a minor child and/or critically comment on agency performance.

d.   Defendant Agencies and their decision makers have encouraged the instant conduct by failing to take any disciplinary action whatsoever despite notice.  As a result of these failures, said agencies failed to protect the rights of the Plaintiff to truthfully inform the court of the welfare of children under her care.

Complaint ¶ 24.  In the Court's view, these assertions sufficiently identify municipal policies or customs pursuant to which defendants were allegedly acting and has adequately provided defendants with fair notice of plaintiff's claims and the grounds upon which they rest so as to survive a motion to dismiss.

Alternatively, defendants argue that the claims against CYS should be dismissed because it is protected by both judicial and qualified immunity.  Defendants rely on their immunity arguments previously made with respect to the § 1983 claims brought against Cross.

11

As the Court concluded then, and reiterates now, the court orders to which defendants cite to support their assertion that they were acting at the direction of the court when they removed Keith from plaintiff's home were not issued until after Keith was removed.  Thus, it cannot be said that either Cross or CYS was acting pursuant to those orders and CYS, like Cross, is not entitled to judicial immunity.  See Lockhart v. Hoenstine, 411 F.2d at 460.

Similarly, as previously found with respect to defendant Cross' claim to qualified immunity, plaintiff has not only alleged a constitutional violation but has alleged facts which suggest that the reasons given by defendants for removing Keith from plaintiff's home were not true and were merely pretext for defendants' acts of retaliation for plaintiff's criticisms of defendants.  If proven, such facts would preclude a finding that either Cross or CYS was acting within reasonable professional standards or that it would have been unclear to them that removing Keith from plaintiff's custody was violative of plaintiff's rights.  See Doe v. County of Centre, PA, 242 F.3d at 454.  See also Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).  As such, CYS is not entitled to qualified immunity either.

Finally, defendants have moved to dismiss the state tort claims brought against them arguing that they are entitled to governmental immunity under the Pennsylvania Subdivision and Tort Claims Act, 42 Pa. C.S.A. § 8541, et seq. ("the Act").  Plaintiff has indicated that she did not intend to bring state tort claims against CYS thereby conceding that those claims are properly dismissed.  Thus, the Court will address the issue only as it pertains to Cross.

In addition to the governmental immunity afforded to local agencies under § 8541, the Act also extends official immunity to employees of local agencies who, acting within the

scope of their employment, cause injury to another person or property.  42 U.S.A. § 8545.[5]  See

Owens v. Philadelphia, 6 F. Supp. 2d 373, 394 (E.D. Pa. 1998).  See also Kuzel v. Krause, 658

A.2d 856, 858-59 (Pa. Commw. 1995).  Under § 8550, however, where the employee's act

constitutes "a crime, actual fraud, actual malice or willful misconduct" the official immunity

afforded under § 8545 no longer applies.[6]  Owens v. Philadelphia, 6 F. Supp. 2d at 394 ("§ 8550

exempts claims based upon 'willful misconduct' from the state's grant of immunity.").

Willfulness will be found where the employee sought to bring about the result that followed his

conduct or where he was aware that it was substantially certain to follow.  Id. at 395, citing King

v. Breach, 115 Pa. Commw. 355, 366-67, 540 A.2d 976, 981 (1988).

In the instant case, plaintiff has brought state law claims for intentional

interference with economic opportunity and intentional infliction of emotional distress.  In

support thereof plaintiff has alleged that she was retaliated against for expressing her concern that

defendants were not acting in Keith's best interest, that the reports of senility and her inability to

act as a foster parent were untrue, and that defendants leaked the false information regarding her

fitness as a foster parent which not only damaged her reputation but has infringed on her ability

to provide foster care in Washington and Monroeville Counties.  Complaint ¶¶ 17, 19, 20.  As

well, plaintiff has alleged that:

> the joint conduct of the Defendants in removing the minor child,
> revoking her eligibility as an approved foster caregiver, and
> damaging her reputation as a bonafide foster parent was

---

[5]Specifically, section 8545 provides that: "An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the extent as his employing local agency . . . ."

[6]Section 8550 states that: "In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee . . . and that such act constituted a crime, actual fraud, actual malice or wilful misconduct, the provisions [relating to official immunity] shall not apply."

> intentional, reckless and/or otherwise designed to embarrass and/or
> retaliate against the Plaintiff for the exercise of her First
> Amendment right to petition the government and/or otherwise
> speak out in the best interest of the minor child.

Complaint ¶ 21.

The Court finds that these allegations are sufficient to show that defendants sought to damage plaintiff's reputation and infringe on her ability to act as a foster parent or, at the very least, that they were aware that such damage was substantially certain to follow.  Indeed, intentionally leaking false information about plaintiff in order to retaliate against her not only suggests an intention to achieve a wrongful purpose but the very nature of the information revealed -- that plaintiff was unfit to act as a foster parent -- appears designed to damage plaintiff's reputation and, thus, her ability to act as a foster parent.  As such, the Court finds that defendants' actions, as alleged, constitute "willful misconduct" and precludes a finding that Cross is protected by official immunity.

For these reasons, the motion to dismiss submitted on behalf of defendants CYS and Cross is denied.


Dated: 13 February, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RUTH VIRGINIA BARRON,                          )
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )          Civil Action No. 05-1517
                                               )
WASHINGTON COUNTY CHILDREN                     )          Magistrate Judge Hay
AND YOUTH SOCIAL SERVICE AGENCY,               )
CHRISTY CROSS, individually and in her capacity )
as Caseworker II for Washington County Children )
and Youth Social Service Agency,               )
FAMILY CARE FOR CHILDREN &                     )
YOUTH, INC., DEBORAH A. MCALLISTER,            )
individually and in her capacity as Regional   )
Director of Family Care for Children & Youth, Inc., )
JAMIE L. LEGAS, individually and in her capacity )
as Supervisor for Family Care for Children &   )
Youth, Inc., TAMARA SMITH, individually and    )
in her capacity as Case Manager for Family Care for )
Children & Youth, Inc.,                        )
                                               )
                    Defendant.                 )

ORDER

          And now, this 13th day of February, upon consideration of the motion to dismiss

submitted by defendants Washington County Children and Youth Social Service Agency and

Christy Cross [Doc. 35], IT IS HEREBY ORDERED that said motion is DENIED.


                                        /s/   *Amy Reynolds Hay*
                                        AMY REYNOLDS HAY
                                        United States Magistrate Judge



cc:     Peter M. Suwak, Esquire
        P.O. Box 1
        Washington, PA 15301

        Joyce A. Hatfield-Wise, Esquire
        100 West Beau Street, Suite 502
        Washington, PA 15301

Stuart H. Sostmann, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
600 Grant Street, USX Tower
Suite 2900
Pittsburgh, PA 15219